UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

UNITED STATES OF AMERICA

      -v-                                    No.  14CR417-LTS

PHILLIP RUTHERFORD,

          Defendant.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

        Defendant Phillip Rutherford ("Defendant") is charged, in the above-captioned indictment, with two counts of violating 18 U.S.C. § 922(g)(1), which prohibits the possession of firearms by persons who previously have been convicted of felonies.  Defendant has moved to suppress evidence found as a result of a search conducted pursuant to a warrant executed on June 6, 2014, and evidence found as a result of a subsequent purported consensual search of his apartment.

        The Court held an evidentiary hearing on September 17, 2014.  The Court has observed each witness carefully and has reviewed thoroughly the evidence and the post-hearing and other submissions of the parties.  For the following reasons, Defendant's suppression motion is granted in its entirety.

<u>FINDINGS OF FACT</u>

        On June 3, 2014, Officer Jason Fernandez of the New York City Police Department ("NYPD") applied for a warrant to search Apartment 11A in a building located at 1481 Washington Avenue in the Bronx.  The warrant application sought authorization to search for and seize "two semi-automatic firearms" which were alleged to have been "unlawfully

possessed." (Fernandez Aff., docket entry no. 9-6, at 3.) Officer Fernandez submitted an affidavit with the application in which he proffered that a confidential informant (the "CI") had informed him that the CI had "observed two black semi-automatic firearms in the closet" of one of the bedrooms of Apartment 11A. (Fernandez Aff., docket entry no. 9-6, at 4.) Officer Fernandez further proffered that he had been told that the weapons were "inside a safe that was inside a black book bag resting on top of an unplugged television set." (Id.) Officer Fernandez' affidavit did not proffer any legal or factual basis for his assertion that the weapons were "unlawfully possessed."

Officer Fernandez swore out his warrant affidavit before Judge Dakota Ramseur of Bronx County Criminal Court. The CI, who also appeared before the judge, made unsworn statements to the judge that the CI had seen the two weapons in the apartment, and that the owner of the apartment, Taniqua Green, was "holding them for her boyfriend." (Fernandez Aff., docket entry no. 9-6, at 6.) There is no evidence that Officer Fernandez or the CI provided any further information regarding the criminal history or gun permit status of any of the apartment residents or of the boyfriend. (Rutherford Reply, Ex. A, docket entry no. 12-2, at 2.) Judge Ramseur issued a no-knock search warrant authorizing the NYPD to search Apartment 11A for "two semi automatic firearms" and "evidence tending to . . . connect persons found therein to the premises, to wit: personal papers and effects." (Search Warrant, docket entry no. 9-6.) Aside from a general statement that the items sought were "unlawfully possessed," the warrant did not identify the crime of which the weapons or connection documentation would serve as evidence.

On June 6, 2014, Officer Fendandez and other members of the NYPD executed the search warrant. Officer Fabio Checo led members of the Emergency Service Unit ("ESU") to Apartment 11A. ESU secured the apartment and handcuffed the three occupants – Defendant,

Ms. Green, and Ms. Green's brother Michael.  Officer Checo began to search the bedroom that

the CI had described and found a book bag with a safe inside.  (Sept. 17, 2014 Tr. ("Tr.") 18:18-

20.)  Officer Checo asked members of the ESU to open the safe, and inside they found a gun.

Officer Checo testified that, when Defendant saw the gun, he stated that it was not his.  (Tr.

18:25 - 19:2.)  The officers also found a piece of mail in the book bag with Defendant's name on

it.  The officers showed Defendant the letter and, according to Officer Checo, he stood there

silently looking at it.  (Tr. 19:4-7.)

   Having seized only one gun in Apartment 11A, the officers proceeded to the

apartment Defendant shared with Ms. Carolyn Rutherford, which was located on a lower floor of

the same building.  Officer Checo testified that he decided to go to Defendant's residence

"[b]ecause the information that I had was two firearms, and I only recovered one in the first

apartment."  (Tr. at 107:5-6.)  Officer Checo further testified that he had learned the location of

Mr. Rutherford's apartment from "[p]olice records" and the CI.  (Tr. at 107.)  The testimony was

unclear as to when this information was obtained.  On the day the officers knocked on her door,

Ms. Rutherford, who is Defendant's 64 year old mother and had been leasing the downstairs

apartment for over 20 years, was living there with Defendant, her son Eric, Eric's girlfriend, and

Eric's 20-month-old son.  She and Defendant each had a bedroom, as did Eric and his family.

   The testimony concerning the police officers' encounter with Ms. Rutherford and

their conduct in the apartment diverged in material respects.  Officer Checo and Lieutenant

Morales each testified that, after they had knocked on the door and explained that they believed

that Defendant had stored a firearm in her apartment, Ms. Rutherford invited the officers into the

apartment to search for the firearm.  (Tr. at 21, 58, 109.)  The officers testified that Ms.

Rutherford had expressed concern at having a weapon in the apartment with her young

grandchild.  Officer Checo and Lieutenant Morales each asserted that Ms. Rutherford then gave

them verbal consent to search for the firearm.  The officers' testimony about the events leading

up to Ms. Rutherford's alleged consent was inconsistent.  For example, their accounts of whether

Ms. Rutherford invited the officers into her apartment varied widely.  Officer Fernandez stated

that she told them to "have a seat in the living room" while they waited for a consent-to-search

form (the "Consent") to be brought from the precinct headquarters, while Officer Checo testified

that the police waited in the entry way.  (Compare Tr. at 60 with Tr. at 110-11.)  Lieutenant

Morales testified that it took five to ten minutes to retrieve the Consent (Tr. 23:24); Officer

Fernandez testified that it took ten to fifteen minutes to retrieve the Consent (Tr. 82:5); and

Officer Checo testified that it took only "five minutes or so" to have "an officer downstairs

retrieve" the Consent (Tr. 110:21).  On the other hand, Detective Montanez testified that he had

been asked by a supervisor to return to the precinct to retrieve the Consent, and that it had taken

him twenty to thirty minutes to drive to the precinct, print the form, and return to Ms.

Rutherford's apartment.  (Tr. at 94: 2-13.)  All of the officers testified that Ms. Rutherford signed

the Consent memorializing her consent in writing before the officers began searching her

apartment for Defendant's firearm.  (E.g., Tr. 80-82.)  Officer Checo signed the Consent as a

witness of Ms. Rutherford's signature.  (Tr. at 115:12-13.)

        Ms. Rutherford testified that, when the officers knocked on her door, she asked if

they had a warrant to search her residence.  Without admitting that they did not have a warrant,

the officers were insistent that they needed to be allowed into her apartment to retrieve the gun,

because "[t]he baby can get hurt."  (Tr. at 139-40.)  Ms. Rutherford, terrified of the police

officers and concerned for her grandchild who was then in the bathtub unsupervised, allowed the

officers into her apartment because "it didn't look like anybody was going to leave without

searching the house." (Tr. at 140-41, 144.)  She testified that, once they were inside, the police

did not ask for consent to search Defendant's bedroom; they simply asked her to identify it and

began searching.  The officers found a second firearm under Defendant's mattress, and a pound

of marijuana, in the bedroom.  (Tr. at 113:1-5.)

        Ms. Rutherford testified that she signed the Consent after her apartment was

searched and a firearm was recovered.  She further testified that she did so because the police

threatened to have her removed from the apartment, which is in public housing.  (Tr. at 143-44.)

Having observed carefully all of the witnesses, considered their respective motivations in

testifying, and evaluated the substance and manner of delivery of their testimony, the Court finds

Ms. Rutherford's testimony more credible than that of the officers.  The Court further finds that

Ms. Rutherford did not give her consent prior to the search of Defendant's bedroom and only

signed the consent form after the search had been completed, under threat from the officers of

interference with her ability to remain in her home of over 20 years.

CONCLUSIONS OF LAW

        The Fourth Amendment to the Constitution of the United States provides that:

"The right of the people to be secure in their persons, houses, papers, and effects, against

unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the place to be

searched, and the persons or things to be seized."  U.S. Const. amend. IV.  To prevent "general,

exploratory rummaging in a person's belongings" and the related privacy violations, Coolidge v.

New Hampshire, 403 U.S. 443, 467 (1971), the Fourth Amendment requires that "a warrant may

not be issued unless probable cause is properly established and the scope of the authorized search

is set out with particularity."  Kentucky v. King, 131 S. Ct. 1849, 1856 (2011).  "In the warrant

context, probable cause is a practical, commonsense decision whether, given all the circumstances set forth in the affidavit including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Howe, 545 F. App'x 64, 66 (2d Cir. 2013) (quoting United States v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000)) (internal quotation marks omitted). The "totality of circumstances must present the magistrate with sufficient information to allow that official to make the necessary determinations; his action cannot be a mere ratification of the bare conclusions of others." United States v. Clark, 638 F.3d 89, 97 (2d Cir. 2011) (quoting Illinois v. Gates, 462 U.S. 213, 239 (1983)) (internal quotation marks omitted). The Fourth Amendment does "not require that certain guilt be established before a warrant may properly be issued. Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." Gates, 462 U.S. at 272 (internal quotation marks omitted).

"After-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (internal citations and quotation marks omitted). "A grudging or negative attitude by reviewing courts toward warrants, is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant [, and] courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." Id. (internal citations and quotation marks omitted). Thus, "the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Id., at 236. However, sufficient factual information must be present in the warrant application for the

magistrate to make an independent conclusion, therefore, a conclusory legal allegation is insufficient to establish the existence of probable cause sufficient to support the issuance of a search warrant.  Id. at 239 (A conclusory statement of an affiant that "'he has cause to suspect and does believe that' liquor illegally brought into the United States is located on certain premises will not do." (citing Nathanson v. United States, 299 U.S. 41 (1933))); see also Clark, 638 F.3d at 97 (conclusory allegation that the defendant had "full control" of a multi-unit apartment building was insufficient without factual support to establish the probability that the defendant had full control of the building).

The issuing judge's "action cannot be a mere ratification of the bare conclusions of others."  Gates, 462 U.S. at 239.  "The essential protection of the warrant requirement of the Fourth Amendment, as stated in Johnson v. United States, 333 U.S. 10 . . . (1948), is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'  Id., at 13-14 . . . ."  Gates, 462 U.S. at 240 (parallel citations omitted).

Search of Apartment 11A

The Government concedes, in its post-hearing submission, that the record before Judge Ramseur provided no information with respect to the lawfulness of the possession of the firearms alleged to be in Apartment 11A.  (Gov't Post-Hearing Memo., docket entry no. 21, at 3.)  Officer Fernandez's affidavit merely proffered the conclusory statement that weapons were "unlawfully possessed" and, although Judge Ramseur probed the CI as to the basis for believing that there were guns in the apartment, the CI's testimony sheds no light on whether the

possession of the weapons was illegal.  The Government now proffers that, before swearing out

his warrant affidavit, Officer Fernandez had checked the criminal history of Defendant, finding

that Defendant is a felon ineligible to possess a firearm, and that Officer Fernandez determined

that neither Defendant nor Ms. Green possessed a firearms license.  This information was not

provided to Judge Ramseur, and thus was not the basis of her determination that there was

probable cause to believe that the guns constituted evidence of a crime.  See Whiteley v. Warden,

401 U.S. 560, 565 n.8 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by

testimony concerning information possessed by the affiant when he sought the warrant but not

disclosed to the issuing magistrate.").  Rather, it is obvious that the judge's determination that

there was probable cause to believe that the guns for which search was authorized were evidence

of a crime was "a mere ratification of the bare conclusions" proffered by Officer Fernandez.  The

reviewing court must not defer to such a warrant.  United States v. Leon, 468 U.S. 897, 915

(1984).  The warrant thus was not a valid authorization for the search of Apartment 11A.

        The invalidity of the warrant does not, however, necessarily require the exclusion

of the evidence obtained as a result of the search, for the deterrent purpose of the exclusionary

rule generally is not served:

> when an officer acting with objective good faith has obtained a search warrant
> from a judge or magistrate and acted within its scope.  In most such cases, there is
> no police illegality and nothing to deter.  It is the magistrate's responsibility to
> determine whether the officer's allegations establish probable cause and, if so, to
> issue a warrant comporting in form with the requirements of the Fourth
> Amendment.  In the ordinary case, an officer cannot be expected to question the
> magistrate's probable-cause determination or his judgment that the form of the
> warrant is technically sufficient.

Leon, 468 U.S. at 920-21; see also Herring v. United States, 555 U.S. 135, 144 (2009) ("The exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence.").  The good faith exception established by Leon is not available, however:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

Clark, 638 F.3d at 100.  "The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance."  United States v. George, 975 F.2d 72, 77 (2d Cir. 1992) (internal citation omitted).

Here, the Government cannot meet its burden.  Three of the four indicators identified in Leon preclude a finding of objectively reasonable conduct on the part of the officers.  The warrant and application contained no facts that the judge could have interpreted in reaching a reasoned conclusion that the guns alleged to be in the apartment were unlawfully possessed.  The warrant thus indicates that the issuing judge had abandoned her judicial role insofar as she had relied on Officer Fernandez' conclusory assertion that the guns were evidence of unlawful activity.  For the same reason, the warrant and application are, on their face, so lacking in indicia of probable cause for suspicion of criminal activity as to render reliance upon them unreasonable, and the warrant is so facially deficient that reliance upon it was unreasonable.

Gun possession is not illegal under all circumstances in New York City.  Some people have permits.  Most residents are not prior felony offenders.  To uphold the execution of a search warrant merely upon the assertion of an officer that a gun is held illegally would be to

legitimize the sort of unmediated police invasions of homes that the Fourth Amendment was adopted to prevent.  The Government's proffer that the search should be upheld because the officers had information, undisclosed to the judge, that would have supported an objective probable cause finding, is thus unavailing.  The reckless or negligent conduct of the officers here is the type of conduct that can, and should, be deterred by application of the exclusionary rule. Their reliance on the warrant was not reasonable, and the good faith exception does not preclude suppression of the evidence obtained through the search of Apartment 11A.

"The exclusionary rule applies not only to the 'direct products' of unconstitutional invasions of defendants' Fourth Amendment rights, but also to the indirect or derivative 'fruits' of those invasions.  Whether such fruit is 'of the poisonous tree' – in which case it must be excluded at trial – depends on 'whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstance so as to remove the taint imposed upon that evidence by the original illegality.'"  Young v. Conway, 698 F.3d 69, 77 (2d Cir. 2012), cert. denied sub nom. Unger v. Young, 134 S. Ct. 20 (2013) (internal citations omitted).  Because the statement allegedly made by Defendant after the gun was found was clearly the fruit of the violation, it must be suppressed as well.

Therefore, the Court finds that all evidence seized in Apartment 11A, and the statement of Defendant after his arrest, must be excluded from evidence against Defendant.

Search of Defendant's Apartment

The firearm seized at the Defendant's apartment was also a fruit of the unconstitutional seizure of the first firearm.  Officer Checo testified that he decided to go to Defendant's residence "[b]ecause the information that I had was two firearms, and I only

recovered one in the first apartment." (Tr. at 107:5-6.) This testimony indicates that, absent the unlawful search of Apartment 11A, the officers would not have investigated into the presence of the second firearm at Defendant's home. Therefore, regardless of whether Ms. Rutherford consented to the search of her apartment, the entire investigation was tainted by the unlawful search and seizure of the first firearm in Apartment 11A.

The firearm found in Defendant's apartment must be suppressed for the further reason that, as explained above, the police officers had neither a warrant nor valid consent authorizing the search of Defendant's bedroom.

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent to a search is a question of fact to be determined by reviewing the "totality of all the circumstances." Id., at 227. Consent must result from an individual's free and unconstrained choice rather than a "mere acquiescence in a show of authority." United States v. Wilson, 11 F.3d 346, 351 (2d Cir. 1993). "The Government has the burden of proving, by a preponderance of the evidence, that a consent to search was voluntary." United States v. Isiofia, 370 F.3d 226, 230 (2d Cir. 2004).

Here it is evident from Ms. Rutherford's credible testimony that she did not voluntarily choose to allow the officers to conduct a search in her apartment. She was confronted by a group of officers who refused to display a warrant and were nonetheless determined to enter and search her apartment, she was frightened and concerned for her young grandson, and she was coerced into signing a written consent form after the fact through a threat of losing her apartment. The Government has failed to demonstrate under the totality of the circumstances that Ms.

Rutherford consented to the search of her apartment, and thus the seizure of the firearm in

Defendant's room was unlawful.  The second firearm must therefore be excluded from evidence.

CONCLUSION

For the foregoing reasons, Defendant's motion is granted in its entirety.  Both

firearms, the piece of mail, and Defendant's post-arrest statement are excluded from evidence at

Defendant's trial.

This Order resolves docket numbers 8, 9, and 14.

SO ORDERED.

Dated: New York, New York
      December 2, 2014

                                                  /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                              United States District Judge